**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOROTHY LEAKS,<br>on behalf of herself and others<br>similarly situated, | ) ) ) | |
| | ) | 08 C 1395 |
| Plaintiff, | ) | |
| vs. | ) | Judge Marovich |
| | ) | |
| BARCLAYS BANK PLC; and<br>DOES 1-5, | ) ) | Magistrate Judge Mason |
| | ) | **JURY DEMAND** |
| Defendants. | ) | |

## AMENDED COMPLAINT - CLASS ACTION

### INTRODUCTION

1.     Plaintiff brings this action to rescind two "subprime" mortgage loan for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).

3.     Defendants either reside in or transact business in the District.

### PARTIES

4.     Plaintiff Dorothy Leaks owns and resides in a home at 11361 S. Forest Avenue, Chicago, Illinois 60628.  Her daughter and grand-daughter also live in the home. Plaintiff works for the Chicago Police Department.  She is an ordinary consumer.

5.     Defendant Barclays Bank PLC is a multinational bank with U.S. headquarters in New York, N.Y.  It is a subsidiary of Barclays PLC, one of the largest global

1

financial services providers in the world.  Barclays Bank PLC is engaged in the business of, <u>inter</u> <u>alia</u>, purchasing and holding title to sub-prime, residential mortgage loans on properties located in Illinois.

6.      On information and belief, Barclays Bank PLC was the last owner of plaintiff's loan, prior to plaintiff paying off the loan in July, 2007.  On information and belief, Barclays Capital Real Estate, Inc., d/b/a/ Homeq Servicing, was the last servicer of plaintiff's loan.

7.      If Barclays Bank PLC was not the last owner of plaintiff's loan, the actual owner(s) is/are named as Does 1-5.

8.      New Century Mortgage Corporation ("New Century") was the originating creditor of plaintiff's loan.  However, New Century is not made a defendant because it is bankrupt.  New Century was a mortgage lender that, prior to its bankruptcy, made more than 26 loans per year.

<u>FACTS COMMON TO ALL COUNTS</u>

<u>September, 2006 Loan</u>

9.      Prior to September 6, 2006, plaintiff applied for refinancing through a mortgage broker, Illinois Mortgage Funding ("IMF"), after seeing an IMF TV advertisement. On information and belief, plaintiff dealt with an IMF broker by the name of Andrew Wanda.

10.      Through IMF, WMC agreed to make a loan to plaintiff in the amount of $199,750.

11.      Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

2

12.     The loan was closed on or about September 6, 2006.  Contrary to information on the HUD-1 Settlement Statement, the loan was closed in plaintiff's home.

13.     The following are documents relating to the loan:  a mortgage (Exhibit A), a note (Exhibit B), a HUD-1 Settlement Statement (Exhibit C), a Truth In Lending Disclosure Statement (Exhibit D) and two federal Notice of Right To Cancel forms (Exhibit E).

14.     The Notice of Right to Cancel forms provided to plaintiff at closing were incomplete; neither clearly and conspicuously disclosed either the date of the transaction or the final to date to cancel, as required by law (Exhibit E).

15.     WMC made plaintiff a "2/28" adjustable interest rate loan, with a starting interest rate of 9.72% (Exhibit B).  After two years, the rate could increase to 12.72%; in each six-month period thereafter, it could increase by 1.0% up to a maximum rate of 16.22%.

16.     Plaintiff also paid exorbitant closings costs.  Plaintiff paid both a $950.00 "application fee" to WMC (Exhibit C, line 805) and a $996.00 "processing fee" to IMF (line 806).

17.     In addition, IMF charged plaintiff both a $4,499.17 "loan origination fee" (Exhibit C, line 601) and received a $1,997.50 Yield Spread Premium ("YSP") payment from WMC in exchange for increasing plaintiff's interest rate above the rate she actually qualified for.

18.     Following closing, plaintiff was directed to make payments first to Litton Loan Servicing (Exhibit F), then later to Chase Home Finance, LLC (Exhibit G).

**January, 2007 Loan**

19.     Just three months after refinancing plaintiff, Mr. Wanda of IMF solicited plaintiff in December, 2006, promising to lower her interest rate if she refinanced with him again.

20.     Prior to January 26, 2007, plaintiff, through IMF, was approved for a loan with New Century in the principal amount of $208,000.

21.     Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

22.     Wanda and IMF represented to plaintiff that she would receive a loan with a fixed interest rate and that the monthly payment amount would be $1,400, inclusive of amounts for escrow.

23.     The loan was closed on or about January 26, 2007 in a Pepe's restaurant on Taylor Street in Chicago.  At that time, plaintiff was not provided with any of the closing documents in a form that she could keep, including without limitation the Truth In Lending Disclosure Statement and the federal Notice of Right To Cancel forms.

24.     Plaintiff's copies of the closing documents were sent to her by overnight courier approximately two weeks later.

25.     When she received her copy of the closing documents, only one federal Notice of Right to Cancel was provided, instead of the two required by law.

26.     The following are documents relating to the loan:  a mortgage (Exhibit H), a note (Exhibit I), a HUD-1 Settlement Statement (Exhibit J), a Truth In Lending Disclosure Statement (Exhibit K) and a federal Notice of Right To Cancel form (Exhibit L).  The mortgage was in favor of MERS.

27.     New Century gave plaintiff a loan with an adjustable interest rate and a balloon payment.

28.     Plaintiff received a starting interest rate of 8.9% for two years, good until February, 2009, at which time the rate could have jumped to 10.4%.  Thereafter, under the terms

of the Note the rate could have adjusted by as much as 1.5% in each six month-period, up to a maximum of 15.9% (<u>Exhibit I</u>).

29.     The balloon payment feature meant that plaintiff's final monthly payment would have been $140,913.18 (<u>Exhibit K</u>).

30.     In addition, <u>Exhibit J</u> shows that IMF and New Century charged plaintiff in excess of $9,000 in "points and fees" on a loan of $208,000 (line 1400).  This included two processing fees, one to the broker in the amount of $998.00 (line 805) and one to New Century in the amount of $310.00 (line 806); as well as an "underwriting" fee of $450.000 to New Century (line 808).

31.     Further, as with the WMC loan, IMF both charged plaintiff a direct broker fee and received a YSP payment from the lender to increase her rate.  This time, the "loan origination fee" was $2,999.00 and the YSP was $3,120.00 (<u>Exhibit J</u>, line 812).

32.     Despite Wanda's representations, plaintiff's monthly payment amount was actually $1,918.36.

33.     Plaintiff received little benefit from IMF's second refinancing of her home; the major benefit was to Wanda/IMF and New Century.

34.     Following closing, plaintiff was directed to make payments to New Century (<u>Exhibit M</u>) and, still later, to Homeq (<u>Exhibit N</u>).

35.     Ownership of plaintiff's loan was later assigned to Barclays Bank PLC.  In the event Barclays was not the last entity to own plaintiff's loan, the actual owner(s) is/are named as Does 1-5.

36.    On information and belief, in addition to plaintiff's loan Barclays Bank PLC acquired one or more large pools of mortgage loans originated by New Century during the period between three years prior to the filing of this action and the present.

### COUNT I – TRUTH IN LENDING ACT – INDIVIDUAL CLAIM AGAINST BARCLAYS BANK PLC

37.    Plaintiff incorporates paragraphs 1-36.  This count is against Barclays Bank PLC.

38.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23.  Sect. 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

39.    Only one federal Notice of Right to Cancel form was provided to plaintiff,

instead of the two required by Sect. 226.23(b) (see above).

40.    Further, by the time the Notice of Right To Cancel form was delivered to

plaintiff, the final date to cancel inserted in bold type on the form (i.e., January 30, 2007) had

passed, conveying the impression that plaintiff's right to rescind had already expired.  This

violated 12 C.F.R. Sect. 226.23(b)(5)'s mandate that the Notice "clearly and conspicuously" disclose "the final date to cancel."

41.    Either violation alone is a sufficient ground for liability and rescission.

42.    In addition, New Century failed to timely provide the required financial disclosures, in violation of 15 U.S.C. Sect. 1637, 12 C.F.R. Sect. 226.18 and the corresponding section of the Official Commentary of the Federal Reserve Board ("FRB") on Regulation Z.

43.    When plaintiff eventually received her copy of the TILA Disclosure Statement (Exhibit K), it failed to disclose the frequency of repayment.

44.    Specifically, 15 U.S.C. Sect. 1638(a)(6) requires the creditor to disclose "the number, amount, and due dates or period of payments scheduled to repay the total of payments."  Regulation Z, 226.18(g), also requires disclosure of "[t]he number, amounts and timing of payments scheduled to repay the obligation."

45.    Instructing creditors on how to implement these requirements, the Commentary, 12 C.F.R. Sect. 226, Supp. I, para. 18(g)(4)(i), states as follows:

**4.    *Timing of Payments***

**    *General rule*.  Section 226.18(g) requires creditors to disclose the timing of payments.  To meet this requirement, creditors may list all of the payment due dates.  They also have the option of specifying the "period of payments" scheduled to repay the obligation.  As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or bi-weekly," and the calendar date that the beginning payment is due.  For example, a creditor may disclose that payments are due "monthly beginning on July 1, 1998."  This information, when combined with the number of payments, is necessary to define the repayment period and to enable a consumer to determine all of the payment due dates."**

8

46. The only exception to the "general rule" does not apply here. Finally, all the FRB's model TILA Disclosure Statements, at 12 C.F.R. pt. 226, App. H (H-10 – H-13 and H-15), employ words to describe the intervals or frequency of payment.

47. Exhibit K violates TILA because it neither lists all of the payment due dates, nor describes the frequency of payment in words. From the information given, the consumer is left to surmise that payments are due monthly. That is not "clear and conspicuous" disclosure.

48. On April 27, 2007, plaintiff, through previous counsel, sent notice to defendants that she was exercising her federal right to rescind (Exhibit P).

49. Defendants did not rescind the loan.

50. In order to escape the unexpectedly high monthly payment, which could have lead her into default on her home, plaintiff paid off the loan in July, 2007, with the assistance of Neighborhood Housing Services of Chicago, Inc., a not-for-profit organization that offers loan programs, counseling and other assistance for families victimized by predatory home lenders.

51. In the 7th Circuit, plaintiff is entitled to rescind the loan even after it has been paid off.

52. Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee."

53. In addition, 15 U.S.C. Sect. 1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section**

**1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.      A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b.      Refund of all finance charges paid in connection with the loan, as required by TILA statutory formula;

c.      Statutory damages for the underlying violation;

d.      If appropriate, statutory damages for failure to rescind;

e.      Attorney's fees, litigation expenses and costs; and

f.       Such other or further relief as the Court deems appropriate.

## COUNT II – TRUTH IN LENDING ACT – CLASS CLAIM

54.      Plaintiff incorporates paragraphs 1-53.  This count is against Barclays Bank PLC.

55.      The TILA Disclosure Statement in Exhibit K is a standard form document that was regularly used by New Century, including in connection with those New Century loans purchased after origination by Barclays Bank PLC.

56.      All Truth in Lending Disclosure Statements in the form represented by Exhibit K violate TILA, Regulation Z, and the Official FRB Commentary in that they fail to disclose the frequency of repayment or fail to disclose it in the manner required by TILA and Regulation Z, as set forth above.

## CLASS ALLEGATIONS

57.     Plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons with Illinois residences (b) who entered into a residential mortgage transaction with New Century, (c) received a Truth in Lending disclosure Statement in the form represented by Exhibit K, (d) where the loan was or is now held by Barclays or Homeq, and (e) which loan was closed during the period three years prior to the filing of this action and the present.

58.     The class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of the class.

59.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is simply whether Exhibit K violates TILA.

60.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theory.

61.      Plaintiff will fairly and adequately represent the interests of the class members.  Plaintiff has retained counsel experienced in the prosecution of mortgage cases and class actions.

62.     A class action is superior to other alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.      A declaration that class members have the right and the option to rescind, should they choose to exercise that right upon receiving notice;

b.      Attorney's fees, litigation expenses and costs of suit; and

c.      Such other or further relief as the Court deems proper.

Respectfully submitted,

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project,
208 S. LaSalle Street, Suite #1650
Chicago, Illinois  60604
Phone - (312) 345-1004
Fax - (312) 346-3242
al@alhofeldlaw.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/Al Hofeld, Jr.
Al Hofeld, Jr.

## **NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project,
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - (312) 345-1004
Fax – (312) 346-3242
al@alhofeldlaw.com

**<u>NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS</u>**

     I, Al Hofeld, Jr., attorney for plaintiffs, hereby certify that on June 3, 2008, notice and service of the attached ***Plaintiff's Amended Complaint*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                        <u>s/Al Hofeld, Jr.</u>
                        Al Hofeld, Jr.